The STATE of Ohio, Appellee,

v.

BROWN, Appellant.

[Cite as *State v. Brown* (1994), 97 Ohio App.3d 293.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65097.

Decided Aug. 11, 1994.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Thomas Rein,* Assistant Prosecuting Attorney, for appellee.

*Lawrence Rafalski,* for appellant.

---

KRUPANSKY, Judge.

Defendant-appellant Anthony Brown appeals from his bench trial convictions for felonious assault, domestic violence and disruption of public services with accompanying violence specifications.

Defendant was indicted by the Cuyahoga County Grand Jury August 11, 1992 on the following three charges, *viz.:* (1) felonious assault of Stephanie Simpkins with a knife in violation of R.C. 2923.11 with an aggravated felony and three violence specifications; (2) domestic violence against Simpkins in violation of R.C. 2919.25 with two violence specifications and a "furthermore" clause based on a prior domestic violence conviction; and (3) disrupting public services in violation of R.C. 2909.04 with two violence specifications. The charges arose out of two separate incidents on May 30 and May 31, 1992 at the victim's apartment located at 3782 West 22nd Street in the city of Cleveland.

The record demonstrates that defendant filed three general boilerplate motions to suppress evidence two days following his indictment in the case *sub judice.* Defendant's three motions to suppress were captioned as follows, *viz.:* (1) Motion to Suppress Statements; (2) Motion to Suppress Eye Witness Identification

Testimony; and (3) Motion to Suppress Illegally Obtained Evidence. The three suppression motions challenged the admissibility of different types of evidence and each raised distinct constitutional claims.

On December 14, 1992 immediately prior to trial, defendant waived in writing his right to trial by jury and the matter proceeded to a suppression hearing before a judge. The transcript of proceedings demonstrates the trial court conducted a hearing on only defendant's Motion to Suppress Statements. Defendant expressly withdrew his two remaining suppression motions, *viz.*, his Motion to Suppress Eye Witness Identification Testimony and his Motion to Suppress Illegally Obtained Evidence. As a result, the sole issue for the trial court was whether the police obtained an oral statement from defendant in violation of his rights to counsel and against self-incrimination.

The prosecution presented testimony from Cleveland Police Patrolman David A. Reuse and an audio tape recording of a statement made by defendant after defendant was taken into custody on May 31, 1992 outside the victim's apartment. Patrolman Reuse testified that he and his partner, Patrolman Edwin Caudra, each read defendant his *Miranda* rights prior to the time when defendant made any statements. Patrolman Reuse stated he read defendant his *Miranda* rights prior to placing defendant in the squad car and Patrolman Caudra read defendant his *Miranda* rights after the tape recorder in the squad car was engaged but before defendant made any statement. Patrolman Reuse specifically testified under cross-examination by defense counsel that defendant volunteered the statement recorded on the audio tape without any questioning by the officers as follows:

"Q. Were there any questions or interrogations made by either you or Officer Cuadra [*sic*] to induce Defendant to make his statement?

"A. No."

The audio tape recording, State's Exhibit 1, was played for the trial court. The trial court subsequently denied defendant's Motion to Suppress Statements at the conclusion of the hearing.

The trial court thereafter amended count one of the indictment to delete the aggravated felony specification at the request of the prosecution prior to commencing the bench trial. Defendant also stipulated to his prior domestic violence conviction and two violence specifications accompanying all three charges prior to the presentation of evidence.

The prosecution thereafter presented testimony from the victim, Stephanie Simpkins, and Patrolman Reuse to support the felonious assault, domestic violence and disruption of public service charges. Simpkins testified defendant, who was the father of the youngest of her two children living with her, kicked in

the door of her apartment on May 29, 1992. Simpkins stated she did not report the incident to the police because she was intimidated by defendant. Defendant remained in her apartment throughout the evening and the following weekend.

Simpkins testified that on the following day, May 30, 1992, defendant grabbed her by the collar and threw her down head first onto the floor. Simpkins stated defendant threatened to kill her "before he'd go back to jail" and pulled the telephone out of the apartment wall. Simpkins stated her head hit the floor "real hard" and she received "a real bad headache" from this incident. Her telephone connection was broken and the telephone did not operate after the incident. Simpkins informed the police that "nothing happened" when they responded to the scene pursuant to the request of an unidentified telephone caller because she was afraid of further violence from defendant.

Finally, Simpkins also testified defendant "held her up" and cornered her with a knife to her neck in the hallway of the apartment building the following day, May 31, 1992. Simpkins stated defendant threatened her, but did not cut her, with the knife. Patrolman Reuse concluded the testimony for the prosecution by describing the circumstances of defendant's arrest.

Defendant testified on his own behalf following the denial of his Crim.R. 29 motion for judgment of acquittal. Defendant denied beating the victim or disconnecting the telephone in her apartment on May 30, 1992. Defendant also denied threatening her with a knife on May 31, 1992.

The trial court found defendant guilty of felonious assault, domestic violence and disrupting public services with accompanying specifications following its deliberations. The trial court journalized defendant's convictions on December 24, 1992. The trial court thereafter imposed the following concurrent indefinite terms of imprisonment January 15, 1993 after conducting a sentencing hearing, *viz.*: (1) four to fifteen years for felonious assault in violation of R.C. 2903.11; (2) three to five years for domestic violence in violation of R.C. 2919.25; and (3) three to ten years for disrupting public services in violation of R.C. 2909.04. Defendant, through newly appointed appellate counsel, timely appeals raising three assignments of error.

Defendant's first assignment of error follows:

"The trial court improperly failed to grant the motion to suppress, as the detention of defendant had been improper, once he was found not to be involved in the reported crime for which police say he was stopped, in violation of his Fourth Amendment rights."

Defendant's first assignment of error lacks merit.

Defendant argues the trial court improperly failed to suppress the audio tape recording of his oral statement made while he was in police custody since he was

unlawfully taken into custody. However, based on our review of the record, defendant has failed to exemplify any error.

As noted above, defendant originally filed three generalized boilerplate motions to suppress evidence two days following his indictment in the case *sub judice.* The brief accompanying the first of these three motions, *viz.*, defendant's Motion to Suppress Statements, which ultimately proceeded to a pretrial hearing argued in its entirety as follows:

"The statement(s) taken by police in the case at bar are in violation of the defendant's fifth, sixth and fourteenth Amendment fights [*sic*] under the Ohio and United States Constitutions. The admission into evidence of said statements would violate guarantees in the cases of *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966) and *Burton v. United States,* 391 R.S. [*sic*] 123 [88 S.Ct. 1620, 20 L.Ed.2d 476] (1968)."

Defendant's remaining two motions to suppress evidence were expressly abandoned by defense counsel on the record in open court.

It should be noted in this first assignment of error defendant now challenges his Fourth Amendment constitutional rights on appeal which he did not argue in the trial court. The record demonstrates, however, defendant in the trial court challenged only a violation of his Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution and "Article I" of the Ohio Constitution, which he does not raise in this assignment of error on appeal. Defendant's failure to provide a transcript of the audio tape recording precludes this court of appeals from reviewing the merits of the trial court's ruling on the issues presented to the trial court. See *State v. Hammer* (1992), 82 Ohio App.3d 663, 612 N.E.2d 1300; *State v. Lane* (1988), 49 Ohio App.3d 158, 551 N.E.2d 994.

Defendant's newly minted contention that the trial court should have suppressed his audio tape recorded statement because he was improperly "seized" prior to making the statement in violation of his Fourth Amendment rights lacks merit. The Ohio Supreme Court has recognized that the failure to raise suppression claims in the trial court prior to the commencement of trial precludes raising the argument for the first time on appeal. See *State v. F.O.E. Aerie 2295* (1988), 38 Ohio St.3d 53, 526 N.E.2d 66. Moreover, we note that even if defendant's third motion to suppress evidence, *viz.*, his Motion to Suppress Illegally Obtained Evidence on the grounds he was improperly "searched" in violation of his Fourth Amendment rights, were construed to challenge his "seizure" and raise this issue, defendant specifically abandoned the argument in the trial court.

■ Even if defendant had not expressly abandoned his Motion to Suppress Illegally Obtained Evidence, the trial court would have been warranted in

summarily denying the boilerplate motion since defendant did not assert any factual basis to support the motion. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889; *State v. McLenore* (1992), 82 Ohio App.3d 541, 545–546, 612 N.E.2d 795, 798–799. The record *sub judice*, which contains only the testimony of Patrolman Reuse and no transcript of defendant's audio tape recorded statement, reveals absolutely no factual basis for the Motion to Suppress Illegally Obtained Evidence: Patrolman Reuse testified defendant was belligerent throughout the entire time after he was approached by the police investigating a robbery triggered by a police radio broadcast. Defendant fit the description of the suspected robber. Since defendant fit the description of the suspected robber, the police had a right to approach and question defendant during the investigation of a felony. After defendant was given his *Miranda* rights and placed in the police car, defendant remained belligerent and without questioning by the police continued to rant and rave. In fact, defendant was so belligerent he was placed in shackles or leg irons in the police station and no interrogation of any kind occurred.

 Finally, even if an unlawful arrest occurred in violation of the Fourth Amendment as defendant contends on appeal, this does not provide a basis for excluding post-arrest statements voluntarily given by a defendant after being advised of his *Miranda*, Fifth, Sixth and Fourteenth Amendment rights as in the case *sub judice*. See *State v. Hooper* (1966), 10 Ohio App.2d 229, 39 O.O.2d 435, 227 N.E.2d 414, paragraph four of the syllabus.

Accordingly, defendant's first assignment of error is overruled.

Defendant's second assignment of error follows:

"Appellant was denied due process of law as guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States, where his conviction was not supported by sufficient evidence."

Defendant's second assignment of error lacks merit.

 Defendant contends the trial court improperly denied his motion for judgment of acquittal on the felonious assault with a knife charge in count one. Defendant specifically argues the prosecution failed to present any evidence defendant caused "serious physical harm" to the victim or caused any "physical harm" to the victim with the knife.

However, R.C. 2903.11 defines the crime of felonious assault and provides as follows:

"(A) No person shall knowingly:

"(1) Cause serious physical harm to another;

"(2) Cause or *attempt to cause physical harm to another by means of a deadly weapon* or dangerous ordnance, as defined in section 2923.11 of the Revised Code." (Emphasis added.)

As a result, contrary to defendant's argument, the prosecution is not required to establish defendant caused any type of "physical harm" to the victim to support a conviction for felonious assault. Rather, an attempt to cause physical harm by means of a deadly weapon or dangerous ordnance is sufficient to constitute felonious assault under R.C. 2903.11(A)(2).

The standard governing claims that a conviction is not supported by sufficient evidence has been summarized in *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, as follows:

"As to the claim of insufficient evidence, the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence." *Id.* at 175, 20 OBR at 218, 485 N.E.2d at 720.

The record *sub judice* contains sufficient evidence, when viewed in the light most favorable to the prosecution, to support defendant's conviction for felonious assault with a knife. The record is replete with evidence demonstrating defendant's violent behavior, including the following, *viz.*: (1) kicking in the door to the victim's apartment; (2) throwing the victim to the apartment floor with the result of the victim hitting her head; (3) threatening to kill the victim because defendant did not want to return to jail; (4) holding a knife to the victim's throat; and (5) destroying the victim's ability to communicate by telephone. It is well established that the mere act of brandishing a knife, even without such additional violent behavior against the victim during an entire weekend, may be found to constitute an "attempt to cause physical harm" to sustain a conviction for felonious assault as in the case *sub judice*. *State v. Zackery* (1987), 31 Ohio App.3d 264, 31 OBR 549, 511 N.E.2d 135.

Accordingly, defendant's second assignment of error is overruled.

Defendant's third assignment of error follows:

"Appellant was improperly convicted of the offense of disrupting public services, as the purpose of the statute is not intended to apply to the damaging of home appliances such as radio and television receivers, telephones and the like."

Defendant's third assignment of error lacks merit.

Defendant argues for the first time on appeal that he was improperly convicted of disrupting public services in violation of R.C. 2909.04. Defendant contends he merely hung up the victim's telephone while she was talking on the telephone with her father on May 30, 1992 and damaged the telephone unit. However, based on our review of the record, defendant has failed to exemplify any error.

The record of proceedings in the trial court contains absolutely no hint of defendant's arguments concerning the scope or applicability of R.C. 2909.04 under the circumstances of the case *sub judice.* Defendant did not specifically raise any issue concerning the disrupting public services charge when making his Crim.R. 29 motions for judgment of acquittal during trial or in any other manner at any time prior to or following his conviction of this offense. The grounds supporting this argument were clearly apparent and obviously known during trial and should have been raised in the trial court at that time prior to the appeal *sub judice.*

The Ohio Supreme Court has recognized in this context that belated claims of error raised for the first time on appeal are deemed to be waived, stating as follows:

"The general rule is that 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " *State v. Awan* (1986), 22 Ohio St.3d 120, 122, 22 OBR 199, 201, 489 N.E.2d 277, 279.

By failing to specifically raise any issue concerning the scope or applicability of R.C. 2909.04 in the trial court, defendant waived any claim of error in the case *sub judice.*

██ Moreover, even if defendant had timely raised and preserved this issue, his contention lacks merit. R.C. 2909.04 defines the crime of disrupting public services and provides as follows:

"(A) No person, purposely by any means, or knowingly by damaging or tampering with any property, shall do any of the following:

"(1) Interrupt or impair television, radio, telephone, telegraph, or other mass communications service, or police, fire, or other public service communications, or radar, loran, radio or other electronic aids to air or marine navigation or communications, or amateur or citizens band radio communications being used for public service or emergency communications;

"(2) *Interrupt or impair* public transportation, including without limitation school bus transportation, or water supply, gas, power, or *other utility service to the public;*

"(3) *Substantially impair the ability of law enforcement officers,* firemen, or rescue personnel *to respond to an emergency,* or *to protect and preserve any person* or property *from serious physical harm.*" (Emphasis added.)

Based on our review of the record *sub judice,* the prosecution presented sufficient evidence from which the trial court could reasonably conclude defendant purposely, or knowingly by damaging or tampering with the victim's telephone, either (1) interrupted or impaired utility service to the public, or (2) substantially impaired the ability of law enforcement officers to protect and preserve any person or property from serious physical harm. The evidence and reasonable inferences drawn therefrom, when viewed in the light most favorable to the prosecution, reveal defendant purposely, with specific intent, disconnected access to telephone service at the victim's apartment and prevented the making of an emergency 911 telephone call to the police or telephone call to anyone else for assistance while defendant was beating her.

By destroying the telephone connection in the victim's apartment, defendant interrupted or impaired existing telephone service to the public which included the victim, her two children who lived with her in the apartment and her father with whom she was conversing when defendant pulled the telephone out of the wall. Telephone service to the public includes both the initiation and receipt of telephone calls. Not only could the victim and her children no longer initiate or receive telephone calls at the apartment, but defendant also made it impossible for any member of the public to initiate telephone contact with the victim or her children at the apartment.

Contrary to defendant's argument in his brief on appeal, the record demonstrates defendant did substantially more than merely "hang up" the telephone during the victim's conversation with her father. Rather, the victim testified defendant pulled the telephone out of the wall, disconnected the telephone from the telephone wires and destroyed the telephone. The trial court could properly conclude defendant deliberately prevented the initiation or receipt of telephone communications service at the victim's apartment until the telephone unit could be replaced and connection with the telephone wires at the apartment restored days thereafter.

Defendant's contention the prosecution is required to establish that he completely deprived each and every member of the entire community at large of telephone service lacks merit. R.C. 2909.04(A)(2) is designed by its own terms to protect public *access* to existing telephone communications service, including the ability to initiate or receive telephone calls, without diminution of any kind. As a result, the evidence supports a conviction when the defendant, purposely or knowingly by damaging or tampering with any property, interrupts or impairs

telephone service to the public by preventing either the initiation or receipt of telephone calls at a single location as in the case *sub judice.*

The trial court could likewise properly conclude defendant disconnected telephone service at the victim's apartment on May 30, 1992 to prevent the making of an emergency 911 telephone call to the police or anyone else for assistance while defendant was beating her. The victim testified defendant threatened to kill her "before he'd go back to jail" during the incident when he pulled the telephone out of the wall. Under the circumstances, the trial court could properly conclude that purposely or knowingly destroying a telephone and disconnecting immediate access to emergency telephone service to prevent, obstruct or delay communication with emergency services substantially impairs the ability of law enforcement officers to respond to the emergency in violation of R.C. 2909.04(A)(3).

Accordingly, defendant's third assignment of error is overruled.

*Judgment affirmed.*

SPELLACY, P.J., and JAMES D. SWEENEY, J., concur.