JOURNAL ENTRY AND OPINION
Defendant/appellant John K. Scullion was convicted of one count of disrupting public services, R.C. 2909.04, for forcefully pulling extension cords for two telephones out of the walls of an apartment. while his fourteen-year-old niece was attempting to dial 911 to report his alleged domestic violence. Scullion argues that he did not receive effective assistance of counsel, that the evidence to convict him was insufficient, and that the verdict was against the weight of the evidence. We find Scullion's assignments of error to be without merit, so we affirm the judgment.
The evidence at trial was that Scullion was staying at an apartment in the City of Broadview Heights with his mother and stepfather, his sister Judith Romano, and her three minor children on January 4, 1998. Scullion's fourteen-year-old niece, Kristin, testified that when she heard her eight-year-old brother Justin crying in the living room, she saw Scullion sitting next to him on the couch and holding him for a "time out." (Tr. 90-93.) Kristin asked Scullion to stop because Judith wanted Justin to go in the bedroom with her. Kristin testified that Scullion argued with her, got up from the couch and hit her on the head so that she fell over the garbage and into the corner of the stove in the kitchen. (Tr. 94.) As Scullion and his mother began arguing in the living room, Kristin went for the telephone in the kitchen in order to call the police, but Scullion took the telephone from her and ripped it out of the wall. (Tr. 95.) Kristin then went to her bedroom to dial 911 from the telephone located there, but Scullion pulled that telephone from her as well. (Tr. 96, 100.) Kristin did not know whether that call ever went through. (Tr. 96.) Kristin then left the apartment to go to her friend's house because she was upset about the incident. (Tr. 96-97.)
In the meantime, Broadview Heights police received a radio dispatch concerning a 911 call that had been misrouted to the City of Brecksville. (Tr. 23-24.) The report indicated that it was a hang-up call originating from the apartment occupied by Scullion and his other family members. Both the Brecksville and Broadview Heights dispatchers attempted to call the residence back to determine whether there was an emergency, but the dispatchers were unable to get through to the residence.
Broadview Heights officers Brandenburg and Rummerly responded to the call and were met at the apartment door by Scullion. Scullion and the other occupants said that there was no problem and they did not know how or why a 911 would have been placed. (Tr. 26-29.) Kristin was not at the apartment at that time. (Tr. 29.) While Scullion appeared nervous, the officers did not notice anything else out of the ordinary and left within ten minutes. (Tr. 28-30.) Scullion left at the same time, and a license check of the car he was seen driving did not provide any basis for further inquiry. (Tr. 30-31.)
Approximately thirty minutes later, Officer Rummerly, who was involved in an unrelated traffic stop, was approached by a man who identified himself as Larry Willits, Scullion's step-father. (Tr. 31.) Willits reported that there had been a domestic violence situation at the apartment prior to the officers' initial inquiry. Officers Rummerly and Brandenburg then returned to the apartment. Scullion was not there, and this time the occupants reported Scullion's prior behavior. Shortly after the officers had returned to the apartment, Kristin also returned and reported the incident. The officers observed that the cord to one of the telephones had been torn from the wall and was damaged so much that it could not be plugged back in. (Tr. 33.) The occupants reported that they were not able to place telephone calls. (T. 38.) Judith Romano, Scullion's sister and the mother of the children, confirmed that the telephone cord in the kitchen had been yanked out of the wall. (Tr. 72.)
Scullion was subsequently charged and tried for disrupting public services, R.C. 2909.04.[1] For his part, Scullion denied that
Kristin had used the telephone or that he had pulled either the kitchen or bedroom telephone cords out. (Tr. 112-113, 115, 126-127.) Scullion was convicted and sentenced to fourteen months in prison.
Scullion's first assignment of error states
 I. THE TRIAL COURT ERRED BY DENYING THE DEFENDANT/APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL BY NOT GIVING TRIAL COUNSEL SUFFICIENT TIME TO CONDUCT A REASONABLE INVESTIGATION AND PREPARE FOR TRIAL.
This assignment of error is not well taken.
To establish that he was denied effective assistance of counsel, Scullion must demonstrate that his counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by his counsel's deficient performance such that there is a reasonable probability that were it not for counsel's errors, the result of the trial would have been different. Strickland v. Washington (1984), 466 U.S. 668; State v.Bradley (1989), 42 Ohio St.3d 136. A reviewing court must indulge a strong presumption that trial counsel's conduct was within the wide range of reasonable professional assistance. See Lakewood v.Town (1995), 106 Ohio App.3d 521. Scullion has not made the requisite showing in this case.
Scullion faults the trial court for failing to give counsel sufficient time to investigate and prepare for trial, but this contention is not borne out by the record. There is no indication that counsel sought a continuance or that the court denied a request for a continuance. While Scullion asserts that his counsel was afforded only 48 hours to investigate and prepare for trial, the record itself indicates that Scullion's counsel was assigned to the case on March 19, 1998, a pre-trial was held on April 1, 1998, and trial commenced on April 3, 1998. (Tr. 8.) Scullion's counsel indicated that her office began investigating the case as soon as it was received. (Tr. 8.) And while Scullion asserts that his counsel had insufficient time to prepare a defense, Scullion does not identify with any particularity how his counsel's performance was deficient or how the result would have been different had counsel been given additional time. Our own review of the trial record does not give us any reason to second guess the reasonableness of his trial counsel's performance.
Scullion's reliance on State v. Darrington (June 3, 1993), Cuyahoga App. No. 62076, unreported, is misplaced. In that case, we found the defendant was denied effective assistance of counsel when one defense attorney lacked the experience necessary to try the case and the other more experienced defense attorney met the defendant just over two hours before the trial was scheduled to begin. Nothing in the record before us suggests that Scullion's trial counsel did not adequately prepare or present a defense on his behalf. The first assignment of error is overruled.
Scullion's second and third assignments of error state:
 II. THE TRIAL COURT ERRED BY OVERRULING THE DEFENDANT/APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE.
 III. THE DEFENDANT-APPELLANT'S GUILTY VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.
These assignments of error are not well taken.
"Pursuant to Crim.R. 29 (A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, at syllabus. InState v. Jenks (1991), 61 Ohio St.3d 259, paragraph 2 of the syllabus instructs as follows:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
In this case, Scullion was charged with violating R.C.2909.04, which provides, in relevant part:
 (A) No person, purposely by any means, or knowingly by damaging or tampering with any property, shall do any of the following:
* * *
 (3) Substantially impair the ability of law enforcement officers, firemen, or rescue personnel to respond to an emergency, or to protect and preserve any person or property from serious physical harm.
In State v. Brown (1994), 97 Ohio App.3d 293, the defendant was found guilty of violating R.C. 2909.04 on evidence that he pulled the telephone out of the wall of an apartment, disconnected the telephone wires, and destroyed the telephone. The defendant thereby prevented the occupants from making an emergency 911 call for assistance and made it impossible for any member of the public to initiate telephone contact with the occupants.
In the case at bar, the evidence presented at trial likewise indicated that Scullion substantially impaired the ability of law enforcement officers to respond to an emergency or to protect and preserve persons or property from serious physical harm. Kristin's testimony indicated that Scullion pulled the kitchen and bedroom telephone cords from the wall so that she could not complete a 911 call. Judith Romano acknowledged that the kitchen telephone cord had been yanked from the wall, and this was corroborated by the investigating police officers. The evidence further indicated that although a 911 call was received by the Brecksville dispatcher, it came in as a hang-up and neither the Brecksville dispatcher nor the Broadview Heights dispatcher were able to call back to determine whether there was as emergency. As in State v. Brown, supra, this evidence was sufficient to establish that Scullion violated R.C.2909.04 by preventing the occupants from making an emergency 911 call for assistance and by making it impossible for any member of the public to initiate telephone contact with the occupants.
We also cannot say that the verdict was against the manifest weight of the evidence. The verdict is not against the weight of the evidence when there is evidence which, if believed, will convince the average person of the accused's guilt beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230. The evidence presented below, if believed, could convince the average person that Scullion violated R.C. 2909.04.
Scullion's second and third assignments of error are overruled. The judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. ANNE L. KILBANE, J., CONCUR.
 __________________________________ DIANE KARPINSKI PRESIDING JUDGE
[1] Prior to trial, the state dismissed, on grounds of untimeliness, two misdemeanor charges for domestic violence, R.C.2919.25.