JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant, Charles Johnson, appeals the judgment of the Cuyahoga County Common Pleas Court that convicted and sentenced him for two counts of aggravated arson and one count each of aggravated assault and felonious assault. For the reasons that follow, we affirm appellant's convictions but remand for the trial court to correct its journal entries to accurately reflect what occurred at trial and sentencing.
 {¶ 2} This case comprises two separate indictments against appellant that were consolidated in the trial court. In Case Number CR-417767, appellant was charged with one count of felonious assault while in Case Number CR-418278, he was charged with nine counts of aggravated arson and one count of felonious assault.
 {¶ 3} The events giving rise to these indictments began on September 11, 2001 when 16-year-old Amanda Menzel contacted appellant and asked him to come to her house on West 104th Street and pick her up. Menzel testified that she had argued with Joshua Seeley, the father of her 14-month-old child, earlier that day. Appellant arrived with a friend named Nick and drove Menzel down the street, passing Seeley's house where Seeley, Danny Collier and at least one other male named James were in the yard. It appears that there was some taunting and, according to appellant's testimony, Seeley, Collier and James were going towards their cars with baseball bats. Appellant eventually drove into a parking lot that bordered West 105th Street and Madison Avenue. Appellant testified that he pulled into the parking lot in an attempt to conceal his whereabouts from Seeley, Collier and James but was soon surrounded with no means of escape by the car driven by Collier and another unidentified car. As Collier exited his car, appellant testified that he sensed that he was about to be jumped by Collier and he struck Collier with a pool cue stick in self-defense. Collier, on the other hand, testified that he pulled into the parking lot first and that appellant followed him, striking him with the cue stick even before he completely exited the car. Nick then stabbed Collier in the hand with a knife and James then struck appellant with a baseball bat. Collier left the area to seek medical treatment as did appellant.
 {¶ 4} On September 15, 2001, appellant was again driving down West 104th Street and testified that someone threw a baseball bat at his car. Angered by this event, appellant testified that he contacted some friends to arrange a street fight to take place later that night. Appellant testified that he spoke to Menzel shortly thereafter and, in response to her inquiry as to their plans, appellant told her that he and his friends were going "to finish." As planned, appellant drove down West 104th Street later that evening, flashing the neon lights in his back windshield and playing his stereo at an increased volume in an attempt to draw out Seeley and the others for the street fight. According to appellant's testimony, three other cars accompanied him and were spaced at varying intervals along West 104th Street. One of these cars was a red Pontiac Grand Prix driven by his friend Mike Brumley and containing another friend, Dave Butts, as a passenger. Appellant testified that he was alone in his car and that Nick was in another car. When their first attempt to draw Seeley and the others out was unsuccessful, appellant testified that he drove around the block to try again. On the second attempt, appellant testified that he saw Danny Kraft come outside but not the individuals he was hoping to draw out. Appellant claims that several individuals that he did not know and had never met before began throwing things at one of his friend's cars, the red Pontiac Grand Prix. Appellant testified that he then left the area and drove to a nearby shopping plaza.
 {¶ 5} Danny Kraft testified that he and several others were playing cards late in the evening of September 15th at 3059 West 104th Street. This residence belonged to his aunt and he was residing there at the time. From his position in the living room, he was able to see outside and observed the flashing neon lights of a car parked in front of his aunt's house. Kraft was able to identify the car as a blue Oldsmobile Ciera and that the neon lights emanated from the rear windshield of this vehicle. Upon seeing the lights, Kraft went to the front door. As he was opening the door, Kraft observed an individual lean out of the passenger-side window, light a wick contained in a bottle and then throw the bottle towards the house. Although Kraft observed a small flame emanate from the wick, the bottle did not appear to ignite and Kraft later stepped on the wick and was able to extinguish the flame. Upon closer inspection, Kraft smelled the odor of lighter fluid.
 {¶ 6} Catherine Gregg also lived at 3059 West 104th Street and was walking toward the house when she observed appellant's car with the neon lights flashing in front of her house. She testified that she was somewhat familiar with both appellant and his friend Nick and knew that this vehicle belonged to appellant. Because of the lighting on the street, she was able to observe appellant driving the vehicle and further observe Nick sitting in the front passenger seat. Shortly thereafter she saw a bottle with a flaming wick thrown from the passenger side of the vehicle towards her house. The bottle hit the railing of the porch of her house, bounced off and broke on some bricks in the front yard. Although she testified that she observed a red car parked behind appellant's car, she was sure that the bottle was thrown from appellant's car. According to Catherine, both the red car and appellant's car immediately left the area. Catherine, nonetheless, spoke to appellant later that night and, according to her testimony, appellant stated that the firebomb "was not meant for [her] house."
 {¶ 7} Appellant disputed that the firebomb was thrown from his car. Indeed, he testified that Butts threw the firebomb from the red Pontiac driven by Brumley. He testified that Butts admitted that he "threw something at the house," but that it was a "dud." He further testified that he told Catherine later that night that he had no knowledge that his friends were going to throw the firebomb and apologized for their conduct.
 {¶ 8} At the bench trial that followed, appellant was found guilty of several of the charges against him but not all. As pertains to Case Number CR-417767, appellant was found guilty of the lesser included offense of aggravated assault (against Collier), in violation of R.C.2903.12, which is a fourth degree felony. In Case Number CR-418278, appellant was found guilty of (1) one count of arson, one in violation of R.C. 2909.03(A)(1),[1] which is a first degree misdemeanor; (2) one count of aggravated arson, in violation of R.C. 2909.02, which is a first degree felony; and (2) one count of felonious assault (against Kraft), in violation of R.C. 2903.11, which is a second degree felony. At the sentencing hearing that followed, the trial court sentenced appellant accordingly but did not advise appellant that post-release control was part of his sentence. It did state as much, however, in the sentencing journal entry that followed.
 {¶ 9} Appellant is now before this court and assigns four errors for our review.
 I. {¶ 10} In his first assignment of error, appellant contends that the trial court erred in finding him guilty of aggravated assault against Collier when the evidence supported that he acted in self-defense.
 {¶ 11} In order to establish self-defense, a criminal defendant must prove (1) that the defendant was not at fault in creating the situation giving rise to the altercation; (2) that the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that the only means of escape from such danger was the use of force; and (3) that the defendant did not violate any duty to retreat or avoid the danger. State v. Barnes (2002), 94 Ohio St.3d 21,24, citing State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus; see, also, State v. Cassano, 96 Ohio St.3d 94,2002-Ohio-3751, at ¶ 72. The elements of self-defense are cumulative. If a defendant fails to prove any one of these elements by a preponderance of the evidence, then that defendant has failed to demonstrate that he or she acted in self-defense. State v. Jackson
(1986), 22 Ohio St.3d 281, 284.
 {¶ 12} In this case, appellant is unable to establish that he acted in self-defense. It is undisputed that appellant drove into the parking lot, exited his car and struck Collier, who was unarmed. Appellant's actions contributed to the altercation when he decided to enter the parking lot in the first instance, whether he was followed into the lot or followed Collier there. He easily could have avoided any danger by not entering the parking lot and continuing to a safer destination. Indeed, if, as appellant testified, he observed Seeley and the others enter their cars with baseball bats, driving to an empty parking lot militates against a finding that appellant's actions were entirely blameless. Nothing in the record indicates that appellant had no other choice but to enter the parking lot. On the contrary, appellant chose to enter the parking lot and, without more, his motives for doing so are immaterial in light of that choice.
 {¶ 13} As for his belief that he was in imminent danger of death or great bodily harm, we see no basis for such a belief. Appellant's own testimony supports that this fight was "basically a rumble." Indeed, appellant testified that the entire incident lasted approximately 15 seconds, explaining that "[i]t was like two hits" and "everyone was gone." Appellant claims that Collier made movements that suggested that the latter was about to jump him. Although such behavior may induce a belief that some harm could come to appellant, without more, we are unwilling to find that such conduct is sufficient to induce a bona fide belief that appellant was in imminent danger of death or great bodily harm.
 {¶ 14} Because appellant failed to demonstrate that he acted in self-defense by a preponderance of the evidence, the trial court did not err in finding appellant guilty of aggravated assault. Appellant's first assignment of error is not well taken and is overruled.
 II. {¶ 15} In his second assignment of error, appellant contends that the trial court erred when it denied his motion for acquittal because there was insufficient evidence to support his convictions.
 {¶ 16} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact. State v. Jenks (1991), 61 Ohio St.3d 259, 273. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386-387. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230, 231.
 A. Aggravated Assault Against Collier {¶ 17} R.C. 2903.12 governs aggravated assault and provides that "[n]o person * * * shall [c]ause serious physical harm to another * * * while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force."
 {¶ 18} Appellant contends that, by finding him guilty of aggravated assault, the trial court actually established that he was acting in self-defense because it must have found the facts "reasonably sufficient to incite [him] into using deadly force." We disagree. Merely because one is "incited" into using deadly force does not equate with conduct sufficient to establish self-defense. An individual can commit the offense of aggravated assault without acting in self-defense. Conversely, one can act in self-defense and not act under the influence of sudden passion or fit of rage. See Issac v. Engle (C.A. 6, 1980),646 F.2d 1129, 1135 ("* * * [O]ne could act * * * knowingly and while under extreme emotional distress brought on by serious provocation reasonably sufficient to incite him into using deadly force * * *, and yet act in self-defense."), reversed on other grounds, Engle v. Issac
(1981), 456 U.S. 107.
 {¶ 20} The trial court did not err in denying appellant's motion for acquittal as pertains to the charge of aggravated assault against Collier.
 B. Arson to Property {¶ 21} We note at the outset that, in Case Number CR-418278, appellant was charged with aggravated arson, in violation of R.C.2909.02(A)(2). This statute provides that "[n]o person, by means of fire or explosion, shall knowingly * * * [c]ause physical harm to any occupied structure[.]" The trial court, nonetheless, found appellant guilty of arson contained in R.C. 2909.03(A)(1), yet referenced R.C. 2909.02 rather than R.C. 2909.03. The court stated:
 {¶ 22} "As to Case No. 418278, count one, the aggravated arson involving the structure, I'll find [appellant] guilty of Section A(1), which is a misdemeanor of the first degree."
 {¶ 23} At sentencing, the court referred to this finding only as "the misdemeanor count" and sentenced him accordingly. The journal entry states that the court found appellant "not guilty of aggravated arson as charged in count one, but guilty of aggravated arson ORC 2909.02(A)(1) —1 the lesser included offense under count one * * *." Violations of R.C. 2909.02, are all classified as felonies, not misdemeanors, and subdivision (A)(1), in particular, is a first degree felony. Moreover, a violation of R.C. 2909.02(A)(1) pertains to "serious physical harm to a person" and not a "structure" or other property. Thus, contrary to the transcript of the proceedings and the court's journal entry reflecting those proceedings, it is apparent to us from the context of these proceedings that the trial court mistakenly referenced R.C. 2909.02(A)(1) when it meant to reference R.C. 2909.03(A)(1).
 {¶ 24} R.C. 2909.03(A)(1) provides that "[n]o person, by means of fire or explosion, shall knowingly * * * [c]ause, or create a substantial risk of, physical harm to any property of another without the person's consent * * *." Appellant contends that his conviction for arson to property cannot stand where there was no fire, explosion or damage to the property at 3059 West 104th Street. We disagree.
 {¶ 25} Merely because a firebomb was ineptly made does not negate the potential risk of physical harm. See State v. Wills (1997),120 Ohio App.3d 320, 331. It is the risk of physical harm that is sufficient under the statute, not whether there was actual damage. Although we find that the trial court incorrectly referenced R.C.2909.02(A)(1) as the statute for which appellant was convicted, the trial court did not err in denying appellant's motion for acquittal as pertains to his conviction for arson under R.C. 2909.03(A)(1).
 C. Aggravated Arson[2] and Felonious Assault to Kraft
{¶ 26} R.C. 2909.02(A)(1) governs aggravated arson against a person and provides that "[n]o person by means of fire or explosion, shall knowingly * * * [c]reate a substantial risk of serious physical harm to any person * * *." R.C. 2903.11 governs felonious assault and subdivision (A)(2), in particular, provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance * * *."
 {¶ 27} Appellant contends that the evidence was insufficient to support convictions for these offenses because it was undisputed that he was not the individual who threw the firebomb and, furthermore, Kraft suffered no physical harm. Consequently, he claims that the trial court should have granted his motion for acquittal on these charges. We disagree.
 {¶ 28} It is true that the evidence does not support that it was appellant who threw the firebomb. There was sufficient evidence, however, to place appellant as the driver of the vehicle from which the firebomb was thrown. Kraft himself saw the firebomb thrown in his direction from the passenger side of a car later identified as appellant's. Catherine Gregg, familiar with appellant's car, likewise saw a passenger in appellant's car throw the firebomb in the same direction. Notwithstanding appellant's testimony that he had no passengers in his car at the time the firebomb was thrown, the testimony from these witnesses, if believed, constitutes evidence sufficient to support that appellant created a substantial risk of physical harm so as to defeat a motion for acquittal on the charge of aggravated arson.
 {¶ 29} Moreover, the fact that Kraft suffered no injury is immaterial. It is the risk of physical harm and the attempt to causephysical harm that must be capable of proof beyond a reasonable doubt in order defeat a motion for acquittal for these offenses. See State v.Brown (1994), 97 Ohio App.3d 293, 299. Such evidence existed in this case. Two witnesses observed a firebomb thrown from appellant's car in the direction of Kraft's residence. That the firebomb did not ignite does not negate any of the elements of aggravated arson or felonious assault.
 {¶ 30} Because there was sufficient evidence to support appellant's convictions for aggravated assault against Collier, arson to property (as amended), aggravated arson against Kraft and felonious assault against Kraft, appellant's second assignment of error is not well taken for the most part and is overruled. We remand, however, for the trial court to correct what was most likely a clerical error when it referenced R.C. 2909.02(A)(1) instead of R.C. 2909.03(A)(1) as pertains to appellant's conviction under count one of Case Number CR-418278.
 III. {¶ 31} In his third assignment of error, appellant contends that his convictions were against the manifest weight of the evidence.
 {¶ 32} A manifest-weight-of-the-evidence argument involves determining whether there exists a greater amount of credible evidence to support one side of an issue rather than the other. State v. Thompkins,78 Ohio St.3d at 387. It is not a question of mathematics, but depends on its effect in inducing belief. Id. A reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost his or her way and created such a manifest miscarriage of justice
 {¶ 33} that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 34} We see no miscarriage of justice. Despite the conflicting evidence, we cannot say that the trial court, as factfinder, clearly lost its way in resolving these conflicts. As pertains to appellant's conviction for aggravated assault against Collier, it is undisputed that appellant struck Collier with a cue stick. The evidence did not support that appellant acted in self-defense, despite his argument to the contrary. As pertains to his convictions for aggravated arson and felonious assault, credible evidence was presented that the firebomb was thrown by a passenger in appellant's car in the direction of Kraft's home while Kraft was outside.
 {¶ 35} Appellant's third assignment of error is not well taken and is overruled.
 IV. {¶ 36} In his fourth assignment of error, appellant contends that the imposition of post-release control should be vacated because the trial court failed to inform him on the record that it was part of his sentence.
 {¶ 37} The state concedes that the trial court failed to inform appellant that post-release control was part of his sentence. Nonetheless, it relies on this court's decision in State v. Johnson, Cuyahoga App. No. 80459, 2002-Ohio-4581, for the proposition that the case should be remanded for resentencing.[3]
 {¶ 38} We acknowledge that there are differences of opinion on this court as to the appropriate manner in which to handle this issue. See, e.g., State v. Smith, Cuyahoga App. No. 81344, 2003-Ohio-3215; Statev. Stewart, Cuyahoga App. No. 81468, 2003-Ohio-2867; State v. Finger, Cuyahoga App. No. 80691, 2003-Ohio-402;[4] State v. Johnson, supra. Some judges of this court are of the opinion that remand is required when post-release control is mandatory under R.C. 2967.28(B), as it is in this case.[5] In such cases, "the sentencing court is not modifying its sentence, but rather, is correcting a statutorily incorrect sentence."Johnson, 2003-Ohio-4581, at ¶ 26. This line of reasoning relies onState v. Beasley (1984), 14 Ohio St.3d 74 for the proposition that a statutorily incorrect sentence is not merely voidable but void. "Any attempt by a court to disregard statutory requirements when imposing a sentence renders the attempted sentence a nullity or void." Id. at 75. See Stewart, Cuyahoga App. No. 81344, 2003-Ohio-2867 (Sweeney, J., dissenting); State v. Harris, Cuyahoga App. No. 81677, 2003-Ohio-1003;Johnson, Cuyahoga App. No. 80459, 2002-Ohio-4581.
 {¶ 39} Other judges of this court are of the opinion that because the state has neither appealed nor cross-appealed the imposition of a statutorily incorrect sentence, post-release control is not properly part of an offender's sentence where the offender's only notification was by way of the court's sentencing journal entry rather than being informed on the record during the sentencing hearing. State v. Smith, Cuyahoga App. No. 81344, 2003-Ohio-3215; State v. Stewart, Cuyahoga App. No. 81468, 2003-Ohio-2867; State v. Finger, Cuyahoga App. No. 80691, 2003-Ohio-402. This line of reasoning relies on the Ohio Supreme Court's decision inWoods v. Telb (2000), 89 Ohio St.3d 504, wherein the court held that "[p]ursuant to R.C. 2967.28(B) and (C), a trial court must inform the offender at sentencing * * * that post-release control is part of the offender's sentence." Id. at 513. Those panels following this reasoning have remanded its cases to have the trial court correct the journal entry to reflect what accurately occurred at the sentencing hearing.
 {¶ 40} We are compelled to follow this latter position. Those panels following the Johnson line of reasoning do so because of the mandatory requirement of post-release control under R.C. 2967.28(B). Because of the mandatory nature of post-release control, its omission by the trial court makes the sentence statutorily incorrect and, therefore, void. Yet the Woods court made no distinction between mandatory and discretionary post-release control as the Johnson court would intimate. See Johnson, 2002-Ohio-4581, at ¶ 17. On the contrary, the Woods
court explicitly stated that the requirement of informing an offender at the time of sentencing is required by both R.C. 2967.28(B) and (C). We, therefore, remand this case to the trial court to correct the journal entry to accurately reflect what occurred at sentencing.
 {¶ 41} Appellant's fourth assignment of error is well taken and is sustained.
 V. Conclusion {¶ 42} The judgment of the trial court is affirmed as pertains to appellant's convictions for (1) aggravated assault against Collier; (2) arson to property; (3) aggravated arson against Kraft; and (4) felonious assault against Kraft. We remand this case, however, for the trial court to correct its journal entries to reflect that (1) appellant was found guilty of the lesser included offense of arson, in violation of R.C.2909.03(A)(1) rather than guilty of aggravated arson, in violation of R.C. 2909.02(A) as pertains to count one of Case Number CR-418278; and (2) post-release control is not part of appellant's sentence.
PATRICIA A. BLACKMON, P.J., AND COLLEEN CONWAY COONEY, J., CONCUR
[1] The trial court incorrectly referenced this offense as aggravated arson, in violation of R.C. 2909.02(A)(1). From the context of the court's proceedings, however, it is evident to this court that the trial court intended the conviction to be for arson, in violation of R.C.2909.03(A)(1). See discussion infra.
[2] Both parties incorrectly reference this conviction as one for aggravated assault against Kraft. The record indicates that it was aggravated arson against Kraft for which appellant was indicted, convicted and sentenced.
[3] We note that this case was accepted for review by the Ohio Supreme Court, but was dismissed for want of prosecution. See State v. Johnson,98 Ohio St.3d 1460, 2003-Ohio-644; Johnson, 98 Ohio St.3d 1544,2003-Ohio-2002.
[4] This case has been accepted for review by the Ohio Supreme Court. See State v. Finger, 7/17/2003 Case Announcements, 2003-Ohio-3801, cause to be argued with State v. Jordan, Case Number 2002-1888, Cuyahoga App. No. 80675, 2002-Ohio-4587.
[5] R.C. 2967.28(B) makes post-release control mandatory for first and second degree felonies, felony sex offenses and certain third degree felony offenses involving physical harm to a person. R.C. 2967.28(C), on the other hand, makes post-release control discretionary for certain third, fourth or fifth degree felonies.