OPINION
{¶ 1} Marc Pettigrew appeals from his conviction for disrupting public services in violation of R.C. 2909.04(A)(1) after a bench trial.
 {¶ 2} The facts surrounding Pettigrew's conviction are set out in the State's brief and are fully supported by the trial record.
 {¶ 3} In October of 2001, Pettigrew was arrested for having an assault rifle in the trunk of his vehicle. Although no formal charges have been filed against Pettigrew, the Dayton police are holding the weapon to decide whether or not they will return it or confiscate it. Detective Mark Scott was assigned to his case. In December of 2001, Pettigrew left thirteen (13) messages on Scott's answering machine, inquiring about how to get his gun back. Although this amount of messages did not fill up his voice mailbox, there were other occasions where his mailbox would be filled with messages from Pettigrew. The number that appeared on the caller-ID system was Pettigrew's phone number. Detective Scott was also familiar with Pettigrew's voice. The content of the messages involved inquiry about his weapon and loud music. When Detective Scott's mailbox was full, he was unable to accept any other calls from the public. Detective Scott returned Pettigrew's calls and told him that there was an on-going investigation, that he would be notified after the investigation was complete and to stop calling.
 {¶ 4} In April, 2002, Pettigrew called Sergeant Gary White and left 22 messages on his answering machine, one right after the other, until his machine stopped accepting new messages. The content of these messages was inquiry about the weapon, but also nonsense messages and music. Sgt. White is a supervisor to the homicide squad and receives important information on a 24-hour basis about serious crimes that need immediate attention. When Pettigrew locked up his voice mail system, Sgt. White called him and told him that his conduct was inappropriate and referred him to Det. Scott, who was handling his case. Despite this conversation, two weeks later, Pettigrew left 31 voice messages on Sgt. White's system, again, locking it up. The calls kept coming. In October of 2002, Pettigrew left 21 messages, from midnight to 12:30 a.m., and Sgt. White decided to record them. Because these messages locked up his system, Sgt. White did not receive any calls from 12:30 a.m. until 9:00 a.m. the next morning. Unbeknownst to Sgt. White, appellant had a second weapon confiscated because it was a possible weapon used in a homicide.
 {¶ 5} Because Sgt. White told appellant of the importance of being able to receive messages and appellant was not listening, Sgt. White decided to meet with Pettigrew under the guise that his weapon would be released to him. Pettigrew met with Sgt. White and Detective Doyle Burke and admitted to intentionally locking up the system because no one would call him back. Appellant was arrested for disrupting public services. Appellant admitted to "just being annoying enough to get them to call back." Appellant also admitted that his messages were nothing of substance that they would lock up the system, and that they often occurred after 11:00 p.m.
 {¶ 6} In his sole assignment of error, Pettigrew contends his conviction was based on insufficient evidence as a matter of law. Pettigrew argues that the State failed to show that he knowingly tampered with the officer's answering machine or substantially impaired the ability of the officers to receive citizen tips or to protect the citizenry because of his actions. Pettigrew argues that it is mere speculation that the police officers would have received tips from the public during the time the phone service was locked up by his conduct.
 {¶ 7} R.C. 2909.04(A)(1), provides that, "[n]o person, purposely by any means or knowingly by damaging or tampering with any property, shall . . . [i]nterrupt or impair television, radio, telephone, telegraph, or other mass communications service; police, fire, or other public service communications; * * *." (Emphasis added).
 {¶ 8} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply such an inquiry is the one set forth in paragraph two of the syllabus of State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E. 2d 492:
 {¶ 9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id., at paragraph two of the syllabus.
 {¶ 10} The Cuyahoga County Court of Appeals upheld a defendant's conviction for disrupting public services in violation of R.C. 2909.04(A)(1) where the defendant pulled the defendant's telephone out of the wall. State v. Brown (1994),97 Ohio App.3d 293. Judge Krupansky noted at page 301 of the court's opinion:
 {¶ 11} "By destroying the telephone connection in the victim's apartment, defendant interrupted or impaired existing telephone service to the public which included the victim, her two children who lived with her in the apartment and her father with whom she was conversing when defendant pulled the telephone out of the wall. Telephone service to the public includes both the initiation and receipt of telephone calls. Not only could the victim and her children no longer initiate or receive telephone calls at the apartment, but defendant also made it impossible for any member of the public to initiate telephone contact with the victim or her children at the apartment."
 {¶ 12} By deliberately locking up the police officers' phone system so that the officers could not receive phone messages, Pettigrew disrupted public services in violation of R.C.2909.04(A)(1). The State was not required to prove that Pettigrew's conduct "substantially" impaired the ability of law enforcement officers to protect persons or property from serious physical harm as he was not charged with violating R.C.2909.04(A)(3).
 {¶ 13} Pettigrew contends separately that the trial court should have considered the lesser included offense of telephone harassment since there was evidence presented that he failed to identify himself and played music on the telephone calls to the police to harass and annoy the police officers because they would not return his phone calls on his guns.
 {¶ 14} The State argues, and we agree, that the evidence presented by the State would have supported Pettigrew's conviction for disrupting public services and telephone harassment as well. The evidence presented by the State in this matter was not insufficient as a matter of law. Appellant's assignment of error is overruled.
 {¶ 15} Judgment of the trial court is Affirmed.
Fain, P.J., and Grady, J., concur.